**In re Elmer C. SMITH, Debtor.**

**No. 1:03–bk–74055M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Sept. 20, 2004.

John G. Phillips, Weber & Phillips, N. Little Rock, AR, for Debtor.

### ORDER

JAMES G. MIXON, Bankruptcy Judge.

On June 16, 2003, Elmer Charles Smith ("Debtor") filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code. On March 26, 2004, General Electric Capital Corporation ("GECC") filed an application for administrative expense in the sum of $7,106.25. The Debtor timely objected to the application for administrative expense. The parties submitted the matter to the Court upon stipulated facts and briefs without a hearing.

Jurisdiction is pursuant to 28 U.S.C. §§ 1334 and 157. The matter before the Court is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), and the Court may enter a final judgment.

### FACTS

The facts are not in dispute. The plan as originally proposed by the Debtor treated the claim of GECC as a secured claim and proposed to pay the claim in full during the life of the plan. The Debtor's schedules listed GECC as a creditor holding a claim of $62,355.00 secured by a purchase money security interest in certain equipment described as a 2000 Peterbilt. GECC filed a timely objection to the Debtor's original proposed plan, and the parties entered into an agreed order sustaining the objection. The Debtor agreed with GECC that the transaction between the parties was, in fact, a lease obligating the Debtor to make lease payments of $1,895.00 a month.

The Debtor's proposed modified plan recognized the obligation to GECC as a lease and proposed to pay outside the plan the sum of $1,895.00 a month plus $473.75 per month to cure an arrearage. The arrearage payments were to be paid over a period of twenty months. Although the Debtor and GECC agreed to recognize the transaction as a lease, the Debtor's plan did not specifically propose to assume the lease as required by 11 U.S.C. § 365.[1] On September 23, 2003, the modified plan treating GECC's claim outside the plan was confirmed by order of the Court.

On February 17, 2004, the Debtor file an amended chapter 13 plan. The second modified plan specifically provided that the Debtor was rejecting the lease with GECC. Simultaneously, GECC filed an affidavit of default and motion for relief from the automatic stay alleging that the Debtor had breached its agreement to make payments pursuant to the first modified plan. The Debtor did not oppose the motion, and it was granted by order entered May 7, 2004. GECC did not object to the proposed second modified plan and it was confirmed by order entered March 16, 2004.

The second modified plan contains this specific provision dealing with GECC's claim:

Debtor hereby announces his intention to reject the unexpired lease. The payment has been made outside of the plan, and no further payments are to be made to the creditor on the contract or lease; however, the creditor may file a claim for any deficiency and will be treated as a Pre–Petition Non–Priority Unsecured creditor to receive a pro rata distribu-

---

1. Neither party argues that the Debtor did not assume the lease; therefore, the Court infers that the Debtor satisfied the requirement of

11 U.S.C. § 365 for assumption of an unexpired lease.

tion as with other similarly coded creditors.

Modification of Chapter 13 Plan, filed February 17, 2004.

The creditor's application for payment of administrative expense of $7,106.25 was filed March 26, 2004, ten days after the entry of the order confirming the second modified plan. The administrative expense represented the amount of lease payments due but not paid under the first modified, confirmed plan.

The Debtor argues that GECC is not entitled to an administrative claim because the plan provides that the creditor "may file a claim for any deficiency and will be treated as a Pre-petition Non–Priority Unsecured creditor ...." The Debtor states that this provision is binding on GECC and that the creditor's failure to object to this provision in the second modified plan bars any claim for an administrative expense.

GECC argues that when a debtor rejects a lease after having assumed it, any claims for lease payments that became due during the administration of the case are entitled to a priority administrative status because the lease benefited the estate. *See* 11 U.S.C. § 503(b)(1)(A) (2000). GECC states that the Debtor's use of the leased equipment was "an actual, necessary cost and expense incurred in preserving the estate." (GECC'S Brief in Support of Motion for Allowance of Administrative Expenses, June 18, 2004.) GECC argues further that res judicata does not apply to its claim for administrative expenses because the second modified plan only dealt with GECC's deficiency claim and not its administrative claim.

### DISCUSSION

The Bankruptcy Code provides in relevant part as follows: "After notice and a hearing, there shall be allowed administrative expenses ... including ... the actual, necessary costs and expenses of preserving the estate ...." 11 U.S.C. § 503(b)(1)(A) (2000).

In general, most Courts have determined that for a post-petition debt to qualify as a necessary preservation expense, it must satisfy two requirements: "(1) it must have arisen from a transaction with the estate, and (2) it must have benefitted[benefited] the estate in some demonstrable way." 4 Collier on Bankruptcy ¶ 503.06[3] (Alan N. Resnick & Henry J. Sommer, et al. eds., 15th ed. rev.1993). The administrative claimant has the burden of proof as to both requirements of the statute. *In re Section 20 Land Group, Ltd.*, 261 B.R. 711, 716 (Bankr.M.D.Fla. 2000).

Section 365 of the Bankruptcy Code governs leases in bankruptcy. It provides in relevant part as follows:

rejection of an ... unexpired lease of the debtor constitutes a breach of such ... lease—

(1) if such ... lease has not been assumed under this section or under a plan confirmed under Chapter 9, 11, 12 or 13 of this title, *immediately before the date of the filing of the petition;* or

(2) if such ... lease has been assumed under this section or under a plan confirmed under Chapter 9, 11, 12 or 13 of this title—

(A) if before such rejection the case has not been converted under section 1112, 1208 or 1307 of this title *at the time of such rejection* (emphasis added).

11 U.S.C. § 365(g) (2000).

Generally, if a lease has been assumed by a debtor and later rejected, damages flowing from the breach will be entitled to administrative priority. A lead-

ing treatise on bankruptcy has explained section 365(g) in detail:

> The reason for the somewhat complicated wording is to make it clear that when a contract is assumed in a case under Chapter 9, 11, 12 or 13 and then breached in the ensuing liquidation under Chapter 7, any administrative priority claim flowing from the breach will not fall within the super priority of section 726(b).
>
> Although Section 365(g) indicates that, in general, a post-assumption rejection constitutes a breach as of the time of rejection, it does not clearly indicate that damages from the breach are entitled to administrative priority. One might argue that if the estate gets no benefit from the breach, there is no basis for administrative priority of section 503. The better approach, however, is to recognize that the estate receives the benefit of the assumed contract, which presumably was viewed as beneficial at the time it was assumed, and takes that contract *cum onere*. Therefore, any damages flowing from a breach of a previously assumed contract should be considered first priority administrative expenses.

3 Collier on Bankruptcy at ¶ 365.09[5].

Cases construing Section 365(g) agree with the view expressed by Collier on Bankruptcy. *See, e.g., Adventure Resources, Inc. v. Holland,* 137 F.3d 786, 798 (4th Cir.1998) (ruling that upon assumption of a contract, the expenses and liabilities incurred may be treated as administrative expenses which are afforded the highest priority on the Debtor's estate) (citations omitted); *Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.),* 78 F.3d 18, 27 (2nd Cir.1996)(articulating the circuit's rule that administrative priority was available either if the trustee assumed the executory contract or if the estate received demonstrable benefits under the contract) (citing *American Anthracite Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119, 124 (2nd Cir. 1960)); *Boston Post Road Ltd. Partnership v. Fed. Deposit Ins. Corp. (In re Boston Post Road Ltd. Partnership),* 21 F.3d 477, 484 (2nd Cir.1994) (stating that the rights created by an assumption of the lease constitute a post-petition administrative claim under Section 503(b)(1)(A) of the Code) (quoting *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III),* 995 F.2d 1274, 1281 (5th Cir.1991)); *Elliott v. Four Seasons Properties (In re Frontier Properties, Inc.),* 979 F.2d 1358, 1367 (9th Cir.1992) (stating that if a trustee assumes and then rejects an executory contract, liabilities flowing from that rejection are entitled to priority as administrative expenses) (citations omitted).

The Debtor does not argue that a lessor is not entitled to an administrative claim for damages resulting from the breach of a lease previously assumed. Rather, the Debtor argues that the principles of res judicata prohibit the allowance of this claim because the plan, which was not objected to by GECC, provides that the creditor's deficiency claim is to be treated as a general unsecured claim.

However, the argument is without merit. The principles of res judicata do apply to provisions in Chapter 13 plans and are binding on creditors provided that the notice of the proposed plan treatment was not so deficient as to violate due process. *In re Ramey,* 301 B.R. 534, 545 (Bankr.E.D.Ark.2003), 3 Keith M. Lundin, Chapter 13 Bankruptcy § 233.1 (3d ed. 2000 & Supp.2002). But in this case, the plan provision only states that the creditor's claim for a "deficiency" is to be treated as a general unsecured claim. The word "deficiency" is ambiguous and does

not clearly state that the Creditor is barred from claiming administrative expenses under section 503. In fact, it has been specifically held that a claim for an administrative expense under section 507(b) is not a claim for a deficiency on the underlying obligation. *Bonapfel v. Nalley Motor Trucks (In re Carpet Center Leasing Co.)*, 991 F.2d 682, 685–86 (11th Cir. 1993).

Therefore, the plan does not address the creditor's claim for an administrative priority sufficient to satisfy due process so as to bar the claim. For these reasons, the Debtor's objection to the administrative claim is overruled and GECC is allowed an administrative claim in the sum of $7,106.25.[2]

IT IS SO ORDERED.

---

2. The Debtor does not dispute that the estate received value for the use of the truck in the amount of the claim.